UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| **JEFFREY H. CLARK,** | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:07-CV-137 |
| | ) | |
| v. | ) | |
| | ) | |
| **DARREN COMPTON, in his** | ) | |
| **individual capacity,** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

### I.  INTRODUCTION

This case involves a claim under 42 U.S.C. § 1983 for the excessive use of force brought by Plaintiff Jeffrey H. Clark, a former inmate of the Stueben County, Indiana jail, against Defendants Darren Compton and Craig Skeens, two jail confinement officers.[1]  As the parties recognize, since Clark was at the time serving a sentence for a state court criminal conviction, his claim arises under the Eighth Amendment for alleged cruel and unusual punishment.[2] *See Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999) ("[T]he Eighth Amendment's prohibition against cruel and unusual punishment . . . applies only to convicted persons.").

On April 7, 2008, Compton filed a motion for summary judgment. (Docket # 21.)  He first argues that he cannot be liable to Clark as a matter of law because he used only such force

---

[1] Subject matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1343.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] Clark concedes that his claim against Skeens should be dismissed. (*See* Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 1.)  Accordingly, we have deleted Skeens from the caption and will only refer to him as necessary in developing the facts.

as was necessary in good faith to restore order following Clark's attack on another inmate and that such force was only *de minimis* in nature. Compton's second argument is that he is entitled to qualified immunity because any reasonable jailer under the same circumstances would have believed that the force he used was necessary to restore order. Clark's response filed on May 7, 2008 (Docket # 24), generally challenges these assertions by offering evidence that after he was handcuffed, a smiling Compton gave him a knee strike to the groin, which caused swelling and severe pain. Compton's reply was filed on May 29, 2008 (Docket # 27).

For the following reasons, the motion for summary judgment will be GRANTED in part as to the claim against Skeens, but DENIED as to Compton.

## II.  FACTUAL BACKGROUND[3]

There is no dispute that Skeens had to break up a scuffle in another inmate's cell that Compton initiated, though from there the stories told by Skeens and Clark quickly diverge. According to Clark, he quickly gave up and walked out of the cell, perhaps guided somewhat by Skeens.

Clark further maintains that he exited into the day room and then laid on the floor, face down and with outstretched arms, waiting to be handcuffed. Though Skeens (Skeens Aff. 13), and Clark (Clark Dep. pp. 28-30), disagree somewhat about whether Clark was uncooperative in the handcuffing process, Skeens apparently called for assistance, and Compton responded from Central Control. In fact, Compton backs up Skeens's version by saying that upon entering the day room, he observed Clark resisting Skeens's handcuffing efforts. (Compton Dep. 9.)

Compton pinned Clark's head to the floor with his knees and pulled Clark's right arm

---

[3] For summary judgment purposes, the facts are recited in the light most favorable to Clark, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

behind Clark's back so that he could be handcuffed. (Compton Dep. 10.)  Once the handcuffing was done, Compton maintains that he attempted to pick Clark up by the shoulders, at the same time pushing with his knee on Clark's chest. (Compton Dep. 10.)  He denies he struck Clark in the groin with his knee. (Compton Dep. 11.)

Clark's version of the event differs critically in that he maintains that just as he was hoisted to his feet, handcuffed, Compton pivoted and while smiling, drove his right knee directly into Clark's groin. (Clark Dep. 30-31.)  Clark doubled over in pain and remarked to Compton that the knee strike "was not necessary." (Clark Dep. 30-31.)  Clark was then taken to a padded cell. (Clark Dep. 32.)  Although Skeens did not see the alleged knee strike, he does confirm that Clark reported it to him shortly after the handcuffs were removed. (Clark Dep. 34; Skeens Dep. 4.)

Clark asked for medical attention but none was ever provided. (Clark Dep. 36.)  Clark maintains that he suffered swelling, pain, and some discomfort from the knee strike. (Clark Dep. 37.)  He described the pain as "excruciating," stating that it "felt like [his] penis and testicles were on fire" and that his "penis and testicle area throbbed with pain for what seemed days." (Clark Aff. ¶ 5.)  Clark does not seem to contend, however, that he has any permanent injuries from the event. (Clark Dep. 37-38.)

### III.  LEGAL STANDARD

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*  The only task in ruling on a motion for

summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV.  DISCUSSION

### A.  The Excessive Force Claim

To prevail on his § 1983 claim, Clark must prove that Compton: (1) acted under color of state law and (2) deprived him of some right under the Constitution or the laws of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982); *Ineco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002); *Harbours Pointe of Nashotah, LLC v. Vill. of Nashotah*, 278 F.3d 701, 704 (7th Cir. 2002). It is undisputed that Compton acted under the color of state law and, therefore, we turn to the question of whether Clark was deprived of his rights under the Eighth Amendment.

The analysis begins with the case of *Hudson v. McMillian*, 503 U.S. 1, 5-11 (1992), where the Court held that the use of force by prison guards violates the Eighth Amendment when it is not applied "in a good-faith effort to maintain or restore discipline" but, rather, is administered "maliciously and sadistically to cause harm." To determine whether the use of

4

force is unconstitutional, a court must consider such factors as "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  Factored into this equation is the extent of any injury sustained by the prisoner. *Id*.

In short, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).  Moreover, an excessive force claim cannot be predicated on a *de minimis* use of force. *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004).  Rather, "the quantum of force required for a constitutional violation is that which is repugnant to the conscience of mankind." *Id.* (internal quotation marks omitted).  Stated otherwise, "not every malevolent touch by a prison guard gives rise to a federal cause of action." *Outlaw*, 259 F.3d at 838 (internal quotation marks omitted).

Indeed, Compton's defense to Clark's claim centers on the proposition that though he denies striking Clark in the groin with his knee, even if we accept Clark's version of events, the force applied was merely *de minimis* and did not violate the Eighth Amendment as a matter of law.  That theory springs from the ruling in *Hudson*, 503 U.S. at 9-10, which has been interpreted to mean that there is no Eighth Amendment violation in those instances where a jail guard has a legitimate security reason for imposing force and the force applied was only enough to cause minor or superficial injuries. *Outlaw*, 259 F.3d at 839.

For example, in *Outlaw*, the Seventh Circuit Court of Appeals held that summary judgment was properly granted on a prisoner's claim arising from a hand injury that occurred when a guard allegedly slammed it in a cuff-port hatch (a small hatch within the cell door). *Id*. at

5

841.  There, because the evidence revealed only a minor injury, the Seventh Circuit held that a jury could conclude only one of two things: either the incident was an accident, or that the guard used a minor amount of force to achieve a legitimate security objective. *Id*.

While the absence of serious injury from the use of force is relevant to an Eighth Amendment inquiry, it does not end it. *Hudson*, 503 U.S. at 7.  Here, although he does not speak of serious injuries from the incident, Clark maintains that the force applied by Compton was not minor, something equivalent to a mere "malevolent touch[.]" *Hudson*, 503 U.S. at 9.  Rather, as the Supreme Court held in *Hudson*, blows to a non-resisting, handcuffed prisoner, such as Clark here, that result in minor bruising and swelling, such as Clark sustained, are not *de minimis* for Eighth Amendment purposes. *Id*. at 10; *see also Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) (finding that a guard's kicking an unresisting prisoner in the groin makes out an Eighth Amendment claim of excessive force).

Thus, the initial question is whether a reasonable jury could find that Compton's knee strike to the groin of a handcuffed Clark was excessive.  That framed inquiry, of course, almost answers itself in that if a jury believes that Clark had stopped all resistance (in fact, Clark's version is that he <u>never</u> resisted either Skeens or Compton), then the only possible conclusion is that Compton brutally and intentionally struck Clark in the testicles as punishment. *Richman v. Sheahan*, 512 F.3 876, 882 (7th Cir. 2008) (concluding that actions of deputies in brutally piling on the back of a morbidly obese person while in the process of handcuffing him raised an issue of fact under the Eighth Amendment).

Beyond, but related to the issue of whether the knee strike was excessive, is the question of whether a jury could reasonably infer that Compton applied that tactic "'maliciously and

6

sadistically for the very purpose of causing harm.'" *Richman*, 512 F.3d at 881 (citing *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *Wilson*, 501 U.S. at 296)).  Or as the Seventh Circuit put it in *Hill,* 992 F.2d at 717-18, the test in an Eighth Amendment excessive force case is whether the plaintiff has produced sufficient evidence that goes beyond the amount of force applied by the defendant such that a reasonable jury could infer that the force applied was done "with the intent to punish."

In fact, *Hill* is particularly instructive on the issue of the intent to punish.  There the Court observed that if the finder of fact accepted the prisoner's version of events, they would be entitled to infer that the defendant jail guard acted maliciously, as there was no need for any physical assault, let alone a kick to the groin, in order to maintain or restore discipline. *Id*. Actually, unlike *Hill*,  the facts in Clark's case go beyond mere deeds in establishing an inference of alleged malicious intent, because here we have Compton's contemporaneous facial expression that a reasonable jury could equate with sadistic pleasure. In short, this combination of evidence tends to confirm what Clark maintains – that Compton's intent was to punish and that he was acting "maliciously and sadistically." *Id.*

Of course, on summary judgment we cannot choose between Clark and Compton's differing accounts of the incident but must accept Clark's version of the facts as true. *See Payne*, 337 F.3d at 770.  Viewing the evidence in the light most favorable to Clark, there was no need for any further force by Compton, and thus the subsequent alleged  kick to the groin was indeed wanton and without justification.  Therefore, summary judgment must be denied. *Hill,* 992 F.2d at 717.

7

B.  Qualified Immunity

Compton maintains that even if there are questions of fact regarding whether he used excessive force, he is entitled to the protection of qualified immunity.  The doctrine of qualified immunity shields government officials, including police officers, against suits brought against them under § 1983 as long as their conduct "could reasonably have been thought consistent with the rights they are alleged to have violated." *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).  When determining whether qualified immunity applies, courts undertake a two-part inquiry. *Id.*

First, the court must determine whether the officer's conduct, taken in a light most favorable to the plaintiff, violated a constitutional right. *Id.*  If no constitutional right was violated under prong one, then no further inquiry is necessary. *Id.*  As discussed *supra*, the Court found that, accepting Clark's factual allegations as true, Compton violated Clark's Eighth Amendment rights to be free from cruel and unusual punishment.  Accordingly, Compton loses on the first prong of the qualified immunity analysis.

However, the Court's investigation does not end there, as the qualified immunity analysis involves a "further dimension" (that is, a second prong) beyond the initial excessive force inquiry. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).  Under this second prong, the court determines whether the constitutional right was clearly established at the time of the officer's actions. *Leaf*, 400 F.3d at 1080.  The relevant inquiry under prong two is whether "it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.*

The plaintiff bears the burden of showing that the defendant's conduct violated clearly established law.  He may do so by offering closely analogous cases or evidence that the

8

defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Ogunsusi v. Straub*, 1:05-CV-359-TS, 2006 WL 3147708, at *5 (N.D. Ind. Oct. 31, 2006) (citing *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993)). If relying on case law, it is not necessary for a plaintiff to find a prior case with nearly identical facts; instead, the plaintiff must produce case law showing that the state of the law at the time of the officer's conduct was such that the officer had fair warning that his conduct violated the Constitution. *Id.* (citing *Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005)).

Moreover, although the qualified immunity determination is an issue of law for the court to decide, when factual disputes surrounding the conduct at issue "bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law," then summary judgment on the issue of qualified immunity must be denied. *Montgomery v. Vill. of Lake Station*, No. 2:02-CV-209, 2006 WL 2457238, at *8 (N.D. Ind. Aug. 22, 2006); *see also Campbell v. City of Indianapolis*, No. 1:03-CV-0180-SEB-VSS, 2005 WL 2396925, at *6 (S.D. Ind. Sept. 28, 2005) ("Summary judgment is not available where factual disputes infuse issues on which entitlement to immunity turns." (citing *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir. 1987)).

Here, the factual disputes between the parties preclude a finding that Compton is entitled to qualified immunity as a matter of law. At the time of the incident, it was clearly established, as *Hudson* so held, that a jail guard violates the Eighth Amendment if he acts "maliciously and sadistically for the very purpose of causing harm." *Richman*, 512 F.3d at 881-82 (citing *Hill*, 992 F.2d at 718). Since if Clark is to be believed, Compton acted with exactly that purpose, and because this would strip him of the defense of immunity, his motion for summary judgment must

9

be denied. *Id.*

## V.  CONCLUSION

For the reasons provided, the motion for summary judgment (Docket # 21) is granted as to Defendant Skeens but denied with respect to Plaintiff's claim against Defendant Compton.[4]

SO ORDERED.

Enter for June 4, 2008.

S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[4] Plaintiff's request for permission to file a sur-reply (Docket # 28) is DENIED as unnecessary.